**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 5, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MOHAMED ALIOU,

       Petitioner,

v.

ALBERTO R. GONZALES, Attorney
General, *

       Respondent.

No.  03-9606
(No. A78-340-516)
(Petition for Review)

---

**ORDER AND JUDGMENT** **

---

Before **HARTZ** , and **BALDOCK** , Circuit Judges, and    **BRIMMER** ,*** District
Judge.

---

\*      On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*\*    The Honorable Clarence A. Brimmer, District Judge, United States District
Court for the District of Wyoming, sitting by designation.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Mohamed Aliou, a native and citizen of Mauritania, seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA), affirming the immigration judge's (IJ) denial of his request for asylum. [1] Our jurisdiction arises from 8 U.S.C. §§ 1252(a)(1) & (2)(B)(ii). *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234-35 (10th Cir. 2003). Because the BIA summarily adopted the IJ's decision, we review the IJ's analysis as if it were the BIA's. *Id.* at 1235. We affirm.

Background

Mr. Aliou entered the United States in early 2000. He was charged with overstaying his visitor's visa. Mr. Aliou conceded deportability, and requested asylum and restriction on removal. After an administrative hearing, the IJ entered an oral order denying relief, but granting Mr. Aliou's request for voluntary departure. The IJ based his decision on his conclusion that Mr. Aliou's testimony

---

[1] Mr. Aliou does not challenge on appeal the order denying his request for restriction on removal (formerly "withholding of removal," *see Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004)), and protection under the Convention Against Torture. Therefore, we deem these issues waived. *See Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

was not credible. Mr. Aliou appeals, asserting that the IJ erred in (1) finding Mr. Aliou not credible, (2) finding the evidence was insufficient to demonstrate past persecution, and (3) denying him "humanitarian asylum." Mr. Aliou further asserts that the IJ abused his discretion in denying asylum.

Mr. Aliou testified at the administrative hearing, through an interpreter, that he was imprisoned in Mauritania for well over a year because of his Fulani race and ethnic background, and his imputed political opinion. He described the evening in late 1989 when troops came to his village and brutalized and murdered the villagers. He was taken by truck into the bush where he was severely beaten and he witnessed the savage murders of several villagers, including two of his brothers. He was then imprisoned for well over a year, during which he was interrogated about a plot to overthrow the government. He was also tied up and beaten frequently, and forced to work. The beatings resulted in the loss of vision in his right eye and various scars. He was on a list of prisoners to be killed, but a guard helped him escape.

He swam to Senegal in March of 1991, where he stayed in a refugee camp for several years. He married during this time. He then went to Gabon in early 1997, and while in Gabon, he met a man who acquired a Mauritanian passport for him. He subsequently left Gabon, and after stopping in Senegal, he arrived in the United States in January of 2000. He applied for asylum the following March.

<u>Regulatory Framework</u>

The asylum process involves two steps:  first the alien must establish his status as a "refugee," and, if he does, then the Attorney General will exercise his discretion to grant or deny asylum.  *Krastev v. INS*, 292 F.3d 1268, 1270-71 (10th Cir. 2002).  A refugee is a person outside his country of nationality "who is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).

An alien can establish his status as a refugee in three ways:  (1) by showing he has a well-founded fear of future persecution, (2) by showing that he endured past persecution that gives rise to a presumption of a well-founded fear of future persecution (unless the INS [2] rebuts this presumption), or (3) by establishing eligibility for "humanitarian asylum."  *Krastev*, 292 F.3d at 1270-71.  Humanitarian asylum may be established by "past persecution so severe as to demonstrate 'compelling reasons for being unwilling or unable to return[,]' . . . [or] by showing 'there is a reasonable possibility that he . . . may suffer other

---

[2]      "The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ('USCIS') within the newly formed Department of Homeland Security."  *Batalova v. Ashcroft*, 355 F.3d 1246, 1248 n.1 (10th Cir. 2004).

-4-

serious harm upon removal to [a particular] country.'" *Id.* at 1271 (quoting 8 C.F.R. §§ 208.13(b)(1)(iii)(A) & (B)).

Standards of Review

We review the IJ's initial determination of refugee status under the deferential substantial-evidence standard. *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004). The IJ's determination that an alien "was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (quotation omitted). The IJ's "findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (quotations omitted). We review the IJ's credibility findings, like other fact findings, to determine if they are supported by substantial evidence. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). The IJ must give specific and cogent reasons for disbelieving an alien's testimony. *Id.*

Analysis

*I. Credibility*

The IJ found discrepancies between information on Mr. Aliou's asylum application and his testimony. On the application, his wife was listed as Senegalese, but Mr. Aliou testified that she was Mauritanian. The IJ noted that if

-5-

she was actually Senegalese, and considering that Mr. Aliou had lived for years in Senegal, "it would seem that [he] could have been resettled in Senegal." R. at 51.

In addition, the IJ found a discrepancy in Mr. Aliou's passport history because it indicated that he had been issued a passport in Mauritania in 1996, even though Mr. Aliou testified that he had left Mauritania in 1991. The IJ observed that the documentation Mr. Aliou originally submitted did not include the complete passport history, and that the passport issued to him in 1997, while he was in Gabon, indicated that it was issued from a distance, while the 1996 passport did not indicate that it had been issued remotely. Mr. Aliou points out that the dates are written in Arabic and he argues that the IJ relied only on his own interpretation for what the Arabic numerals meant. In fact, the IJ compared the numerals on the passports with an exemplar of the Arabic numerals one through eight, R. at 134, a comparison Mr. Aliou does not challenge.

The IJ found most damaging the inconsistencies between the asylum application and Mr. Aliou's testimony about his detention, interrogation, and treatment in Mauritania. On his application, he stated that he had been arrested in Mauritania, but not interrogated, and held for only a few days. In contrast, he testified that he was imprisoned for well over a year, and was beaten and interrogated frequently. Also, his application did not mention the deaths of his

-6-

two brothers, even though the application requested information about family members. Yet he testified that he had witnessed their brutal deaths.

Mr. Aliou attempted to explain the discrepancies. He testified that he speaks no English, only Fulani, and the asylum application was completed by someone who spoke only English. In completing the application, Mr. Aliou communicated through a third person who spoke Fulani and English. The IJ implicitly found this explanation inadequate, a determination within his authority as the finder of fact.

The points on which the IJ found Mr. Aliou not credible pertained to the heart of his allegations of past persecution. As the IJ noted, his claims were not corroborated. While corroboration is not required given that "an alien's testimony alone may support an application for . . . asylum," *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004), the lack of corroboration made Mr. Aliou's credibility crucial. The IJ gave specific, cogent reasons for disbelieving Mr. Aliou's testimony, and those reasons are supported by substantial evidence. Therefore, we conclude that the IJ's adverse credibility determination is sustainable.

## II. Remaining Claims

The IJ's determination that Mr. Aliou's testimony was not fully credible disposes of his claim that the evidence was sufficient to demonstrate refugee

status based on past persecution. Mr. Aliou failed to provide sufficiently credible testimony of past persecution to raise a rebuttable presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1). For the same reason, we must affirm the determination that Mr. Aliou was not entitled to refugee status on the basis of humanitarian asylum. We do not comment on whether Mr. Aliou's allegations, if true, would qualify him for humanitarian asylum. Finally, because Mr. Aliou did not establish his status as a refugee, the Attorney General did not exercise his discretion to deny asylum, so there was no abuse of discretion.

## Conclusion

We deny the petition for review and AFFIRM the BIA's decision to deny asylum and restriction on removal and to grant voluntary departure.

Entered for the Court

Clarence A. Brimmer
District Judge