**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 9, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MUNA BEKHIT MOHAMED SAEED,

Petitioner,

v.

ALBERTO GONZALES, United States
Attorney General,

Respondent.

05-9528

(BIA No. A96 290 004)

(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, and **BALDOCK**, Circuit Judges, and **FIGA**,[**] District Judge.

---

Petitioner Muna Saeed seeks review of a Board of Immigration Appeals's ("BIA")

final order of removal. The BIA affirmed the Immigration Judge's ("IJ") order denying Ms.

Saeed's claim for asylum, withholding of removal, and protection under the Convention

Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252(a)(1), and deny the

petition for review.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] The Honorable Phillip S. Figa, United States District Judge for the District of Colorado, sitting by designation.

**BACKGROUND**

Ms. Saaed, an Eritrean citizen, was born in Ethiopia in a city now part of Eritrea. Ms. Saeed contends that in 1967, at age three, she and her mother and two brothers fled Eritrea for Sudan. That followed the sudden disappearance of her father, who was a member of the Eritrean Liberation Front ("ELF"), an Eritrean "armed opposition group" according to the State Department. In Sudan, the family became members of ELF. Her brothers left to fight for ELF in 1979 and Ms. Saeed has not heard from them since that time.

Ms. Saeed claims while living in Sudan, she attended weekly ELF meetings, after joining at age 13. She further contends that within weeks of each other in 1998, she received a threatening letter from a political party currently in control of Eritrea that opposes ELF, she went into hiding for nearly a month, and her mother died. Ms. Saeed thereafter secured work in Saudi Arabia. However, she first returned to Eritrea, under cover, to obtain a passport with the help of a man she hired. She eventually traveled to Saudi Arabia and worked as a housemaid.

Ms. Saeed asserts that the family employing her treated her as a slave, and that she was raped by the patriarch of the family. The family brought her to the United States in February 2002 via New York. She escaped from the family and traveled by bus to Colorado, where relatives of a friend from Saudi Arabia were living. Ms. Saeed then applied for asylum, contending that if she were to return to Sudan or Eritrea, she would be tortured, imprisoned or would lose her life.

Meanwhile, Ms. Saeed overstayed her authorization to remain in the United States as

2

a non-immigrant visitor, and on April 1, 2003, the Immigration and Customs Enforcement Service ("ICE") began removal proceedings against her. On May 1, 2003, she appeared before an IJ and conceded her removability but sought asylum, withholding of removal and protection under CAT. A hearing was held on July 29, 2003, after which the IJ determined that Ms. Saeed was not a credible witness and did not meet her burden for asylum or withholding of removal. The IJ also denied her application for relief under CAT and ordered her removed to Eritrea, a decision affirmed by the BIA on March 25, 2005, when it dismissed her administrative appeal.

Ms. Saeed filed the instant Petition for Review on April 22, 2005. She contends that the IJ improperly based his credibility determination on unsupported personal opinion and minor inconsistencies in the record, that she meets the definition of a refugee, and that the IJ was mistaken when he found that she had fled persecution 31 years earlier when she and her family fled Eritrea. Rather, she claims that her flight from persecution occurred when she left Sudan where she was threatened because of her ELF activities.

**LEGAL STANDARDS**

The two-step inquiry for disposition of an asylum application requires the applicant to first show she is a refugee and suffered past persecution or has a well-founded fear of future persecution. Second, the Attorney General has discretion to grant asylum but is not required to do so. Elzour v. Ashcroft, 378 F.3d 1143, 1149 (10th Cir. 2004). Persecution is defined as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive." Baka v. INS, 963 F.2d 1376, 1379 (10th

3

Cir. 1992). Asylum may be granted if the IJ finds that the applicant seeking asylum meets the definition of refugee within 8 U.S.C. §§ 1101(a)(42)(A) and 1158(b)(1). An applicant for asylum must show that the persecution she fears is on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). If a petitioner can show that she was persecuted in the past, then there is a rebuttable presumption of future persecution. 8 C.F.R. § 1208.13(b)(1); Yuk v. Ashcroft, 355 F.3d 1222, 1233 (10th Cir. 2004). If not, a petitioner can meet her burden by showing a reasonable possibility of persecution, a showing which includes a subjective and an objective component. See Yuk, 355 F.3d at 1233.

To establish eligibility for withholding of removal, as in this case, an alien must demonstrate a clear probability of persecution under a more likely than not standard, which is more stringent than the well-founded fear of persecution standard in the asylum context. Elzour, 378 F.3d at 1149. Therefore, an alien who fails to satisfy asylum eligibility requirements necessarily fails to qualify for withholding of removal. Uanreroro v. Gonzales, 443 F.3d 1197, 1202 (10th Cir. 2006). An applicant for CAT protection is entitled to a withholding of removal if it is shown that he or she more likely than not will be tortured in the country to which the alien is to be sent. Id.

Where as here, the BIA does not render its own opinion but simply affirms the IJ's decision, this Court reviews the IJ's decision as if it were the BIA's. Wiransane v. Ashcroft, 366 F.3d 889, 897 (10th Cir. 2004). The standard of review for an administrative finding of fact is whether "any reasonable adjudicator would be compelled to conclude to the contrary."

4

8 U.S.C. § 1252(b)(4)(B). This Court must uphold the administrative findings if they are "supported by reasonable, substantial and probative evidence on the record as a whole." Wiransane, 366 F.3d at 897 (quoting Krastev v. INS, 292 F.3d 1268, 1275 (10th Cir. 2002)). In other words, this Court may not reverse the IJ's determination that Ms. Saeed failed to credibly establish past persecution or a well-founded fear of future persecution unless it finds that a reasonable factfinder would be compelled to make the opposite determination. INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992); 8 U.S.C. § 1252(b)(4)(B).

**ANALYSIS**

Here, the IJ found that inconsistencies in Ms. Saeed's testimony precluded him from giving her the benefit of the doubt, and he determined that she lacked credibility and failed to show past persecution or a well-founded fear of future persecution. Specifically, he found the evidence inconsistent as to her membership in ELF. She testified that she joined ELF at age 13, but a letter from the organization reflects that she joined at age 26. The IJ determined that her explanation for this discrepancy–that she only started paying dues when she was an adult–did not make sense, as she had been an adult for several years.

The IJ also found that Ms. Saeed offered vague testimony as to her membership in ELF subgroups or committees. When finally asked specifically whether she was a member of a women's subdivision of ELF, she said yes and gave a name of the subgroup. However, the name differed from the name listed in the letter from the organization confirming her membership.

Further, Ms. Saeed gave conflicting testimony as to the date she received the

5

threatening letter while in Sudan. She testified before the IJ that it was in 1998, but her affidavit listed 1996 as the date of receipt. In response to questions by the government attorney, she changed her testimony and said that it was in 1996, but later acknowledged that she did receive the letter in 1998 and explained the date on the application must be a mistake based on her inability to read and write English. The IJ conceded that "[n]ot all people remember dates and that has to be forgiven, but everyone remembers the year that a parent died. That was 1998 and one would think that clearly she would remember that because she left the country within weeks of her mother's death and within weeks of that same letter." Such a determination is not the application of a personal standard by the IJ but a candid factfinder assessment of why the IJ thought the petitioner lacked credibility on a key point.

The IJ also discredited Ms. Saeed's credibility on the basis that she testified she was forced to live in hiding, but voluntarily took a bus to cross the border back into Eritrea and obtained a passport there. The IJ found it difficult to believe "that a person would do this if she really was a person who was singled out by the government and known to be a political activist." Such a finding is not unreasonable as a matter of law.

Based on the foregoing, the IJ's decision to deny Ms. Saeed's application is "supported by reasonable, substantial, and probative evidence on the record as a whole." Krastev, 292 F.3d at 1275. The IJ's determination that Ms. Saeed lacked credibility is based on evidence in the record, as detailed above, as is his determination that she failed to sufficiently establish past persecution or a well-founded fear of future persecution. The record before this Court does not compel a contrary conclusion. See Elias-Zacharias, 502

U.S. at 483-84. The inconsistencies in petitioner's testimony, taken collectively, are not necessarily "minor" as she contends.

PETITION DENIED.

Entered for the Court,


Phillip S. Figa
District Court Judge