**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

HAMLET MARKOSYAN;
GAREGIN MARKOSYAN,

      Petitioners,

v.

MICHAEL B. MUKASEY,
Attorney General,[*]

      Respondent.

No. 07-9543
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

---

    Hamlet Markosyan and his son Garegin, natives and citizens of Armenia,

seek review of two final orders of removal issued by the Board of Immigration

Appeals (BIA) affirming the immigration judge's (IJ's) denial of their

---

[*]    On November 9, 2007, Michael B. Mukasey became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Mukasey is substituted for Alberto R. Gonzales as the
respondent in this action.

[**]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

applications for asylum, restriction on removal, and relief under the Convention Against Torture (CAT). Because, as set forth below, the IJ's adverse credibility ruling is supported by substantial evidence, the petition for review is denied.

The Markosyans applied for asylum, restriction on removal, and CAT relief based on Hamlet's political opinion and membership in Armenia's National Democratic Union party.[1] Hamlet testified he ran into trouble at work in early 2000 because, among other things, he opposed a new Chief Executive Officer's (CEO's) nepotistic appointments and efforts to have the company financially support the paramilitary Yerkrapah party. In either June or July of 2000, the CEO, a Yerkrapah party member, hit Hamlet in the face and threatened him. After this incident, Hamlet went to the prosecutor's office to file a complaint. He was greeted not only by the prosecutor but also by the CEO, who fired him. The prosecutor then summoned three of his employees, apparently Yerkrapah party members, and told them to teach Hamlet a lesson. According to Hamlet's testimony, he was detained for two weeks and beaten every day. Hamlet further testified that on October 27, 2000, he appeared on live television on behalf of his political party and spoke about Yerkrapah party members' unlawful activities, and how he personally had been mistreated by them. He alleged that later that night, military police came to his home and beat him and he was hospitalized. He and

---

[1]     Garegin Markosyan is a derivative applicant of his father's claims for relief.

his son sued the military police, but he claims that while they were on their way to a hearing in January 2001 he was seized by military police, beaten, threatened, and detained for about a month—during which time he was again beaten and threatened. When he was released he did not seek medical treatment.

The IJ found Hamlet's testimony not credible. Because documentary evidence showed that Hamlet had visited the United States in July 1999 and that his I-94 departure form was not turned in until October 25, 2000, the IJ concluded that Hamlet was in this country until October 25, 2000, and therefore could not have suffered most of the violence he described. Specifically, the IJ relied on an immigration official's testimony about the usual procedures associated with I-94s to reject Hamlet's claim that he had actually returned to Armenia in January 2000, neglected to turn in his I-94, and later had someone whose name he did not know turn it in. The IJ also discounted a passport stamp that appeared to demonstrate entry back into Armenia in January 2000. The IJ went on to note that although the record showed Hamlet had returned to Armenia by October 27, 2000, his neighbor's testimony, offered to corroborate his version of events, was in fact inconsistent with documentary evidence and Hamlet's testimony. Indeed, the neighbor was only "able to testify . . . as to what had been previously written down on a statement." Admin. R. at 58. Ultimately, the IJ denied the relief sought, explaining that Hamlet's testimony was "not credible and does not establish his eligibility and the other evidence is not sufficient for that purpose."

*Id.* at 60-61. The BIA issued two orders affirming the IJ's decision without opinion. This petition for review followed.

When the BIA affirms an IJ's decision without opinion, we review the IJ's decision as if it were the BIA's. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203 (10th Cir. 2006). Credibility determinations are subject to the substantial evidence test. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). Under this test, we determine whether factual findings "are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* Credibility determinations are upheld if the IJ gives "specific, cogent reasons for an adverse credibility finding." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004) (quotation omitted). "An IJ's adverse credibility determination may appropriately be based upon such factors as inconsistencies in the witness' testimony, lack of sufficient detail, or implausibility." *Elzour*, 378 F.3d at 1152.

After reviewing the briefs and record in accordance with the prescribed deferential standard of review, we cannot conclude that a reasonable adjudicator would be compelled to reject the IJ's findings of fact. Rather, the IJ gave specific, cogent reasons for disbelieving Hamlet's testimony and the testimony of

his neighbor, and those reasons are supported by substantial evidence. We therefore DENY the petition for review.

Entered for the Court

David M. Ebel
Circuit Judge