FILED
United States Court of Appeals
Tenth Circuit

December 7, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOSE RODOLFO TELLO,

Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

Respondent.

No. 10-9513
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**GORSUCH**, Circuit Judge.

---

Petitioner Jose Rodolfo Tello, a native and citizen of Peru, entered the

United States on a visitor's visa in March 2003. In April 2004, he applied for

asylum, withholding of removal, and relief under the Convention Against Torture,

asserting that if he returned to Peru, he feared persecution from a Communist

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

terrorist group known as the Shining Path based on his past extensive involvement with the Aprista Peruano political party. In the alternative, he applied for voluntary departure. An immigration judge (IJ) denied relief, except for voluntary departure, and the Board of Immigration Appeals (BIA) dismissed his administrative appeal. Mr. Tello petitions for review from this court, challenging only the denial of asylum. Upon consideration, we deny the petition for review.

## I. Background

Mr. Tello was born in September 1961 in Lima, Peru, and is forty-nine years old now. He asserted that his family of origin had long been involved with the Aprista political party.[1] He said that he became involved with the junior division at the age of twelve and continued his involvement through his teen years. In the mid-1980's, when he was in his twenties, he worked with Absalon Alarcon, a former senator in Peru, and he was in charge of Internal Affairs in that senator's office for a year. From approximately 1992-1994, he was the general secretary of a district for the Aprista party. From 1990-1994, he also worked with Dr. Luis Alberto Sanchez, an author who had previously served as vice-president of the Republic of Peru. After Dr. Luis Alberto Sanchez's death in 1994, Mr. Tello worked for his son, also named Dr. Sanchez, for a couple of years. Mr. Tello also held various other jobs.

---

[1] The Aprista Peruano party is also known as "APRA" (American Popular Alliance) and "PAP" (Aprista Americano). Admin. R., Vol. 1, at 105-06.

Mr. Tello asserted that, in 1987, his uncle and cousin were forcibly removed from a bus in Peru and killed by members of the Shining Path because they were known to be involved with the Aprista party. He said that his brother, Percy, who was on that bus but was not harmed, came to the United States in 1992 or 1993, was eventually granted asylum, and, at the time of the hearing, was a serviceman in the Army who was serving or had served in Iraq. Mr. Tello asserted that his brother, Ismael, was killed for political vengeance by the Shining Path in 1993, but he conceded that the police attributed the motive behind Ismael's death to robbery. Mr. Tello said that his brother, Juan, was injured in a car accident in 1996, and Mr. Tello believes that the accident was caused by the Shining Path. Juan now lives in the United States with his American wife. Mr. Tello's sister, Maria, is a police officer in Peru who has been threatened many times; she lives with her family in a police compound. Mr. Tello also asserted that his brother, David, came to the United States in 1999. The hearing transcripts indicate that David had filed an application for asylum that was eventually denied. Mr. Tello stated that his brother, Rene, had moved to Spain with his family, and that Mr. Tello's parents and his brother, Julio, were living in North Carolina with his brother, Percy.

Mr. Tello stated that from 1996 through 2000, he did not receive any threats from or have any problems with the Shining Path in Peru. He said that in approximately 2001 and 2002, he worked on the political campaign of

Anselmo Revilla Jurado, an Aprista party candidate for senator, but after approximately 2001, he was no longer active in politics. Mr. Tello asserted that in approximately 2000 or 2001, some Shining Path members were released from prison, and he began to receive death threats through anonymous phone calls.

Mr. Tello said that he was assaulted in January 2003 by men claiming to be members of the Shining Path. He said that two cars forced him to stop his car at an intersection as he drove home from work, and four young people forced him out of his car and beat him with their fists until he was unconscious. He said that they were going to shoot him, but witnesses appeared, so they left him. He said that they left pamphlets and shouted notorious statements of the Shining Path to observers. Mr. Tello said that he filed a police report and then was treated at a hospital emergency department and released the same day. He stated that this incident prompted him to come to the United States in March of 2003. His wife and children joined him a few months later. Mr. Tello produced a copy of the report he made to the police of the January 2003 assault and several hundred pages of general information about Peru. None of his family members appeared as witnesses for him, however, and Mr. Tello did not produce a report showing the result of the police investigation of the January 2003 incident, the hospital report from the January 2003 incident, or affidavits from any members of his family.

After the final hearing, the IJ provided two main reasons why Mr. Tello should be denied asylum or other relief:  (1) the past events he described did not rise to the level of persecution; and (2) he failed to present corroboration for his testimony of a physical assault in January 2003, other than a police report that merely restated his own position about it, and he failed to show that the alleged attack was on account of a protected ground.  The BIA dismissed Mr. Tello's appeal, agreeing with the IJ that:  (1) the alleged threatening phone calls did not rise to the level of persecution; and (2) Mr. Tello failed to establish that the alleged physical assault in January 2003 was on account of a protected ground, rather than random criminal activity.

## II.  Issue on Appeal and Analysis

Mr. Tello argues on appeal that the IJ applied an incorrect legal standard by requiring him to corroborate his testimony with other evidence.  He submits that corroboration may now be required under § 101(a)(3) of the REAL ID Act, but that subsection applies only to applications for asylum made on or after the date on which the REAL ID Act was enacted, May 11, 2005.  *See* Pub. L. 109-13, § 101(a)(3), (h)(2), 119 Stat. 231, 303, 305.  He correctly asserts that his application was filed in April 2004, before that revision went into effect.  He also correctly contends that before the REAL ID Act, an alien's testimony alone could support a claim for asylum, *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir.

2004), "where the testimony [wa]s believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his alleged fear[,]" *In re Dass*, 20 I. & N. Dec. 120, 124 (BIA 1989). He asserts that the IJ explicitly found him credible, Admin. R., Vol. 1, at 75, but then improperly rejected his testimony about the political motives of his attackers in January 2003, stating that "while the Court believes that the respondent has a subjective fear of returning to Peru[,] the Court finds that the fear is not supported by objective and credible evidence that he should have that fear[,]" *id.* at 80.

To be eligible for asylum, an alien must first show that he is a "refugee." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004). To establish refugee status, the applicant must demonstrate that he has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Wiransane*, 366 F.3d at 893 (quotation and alterations omitted).

Although the BIA implicitly rejected Mr. Tello's argument that the IJ applied an incorrect legal standard for corroboration, the BIA did not expressly address it, and we therefore "consult[] the IJ's more complete explanation of

-6-

those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review the IJ's legal determinations de novo and its findings of fact for substantial evidence. *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008). "[T]he IJ's findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quotations omitted).

Mr. Tello's argument betrays its weaknesses. We held in *Sviridov* that "an alien's testimony alone *may* support an application for . . . asylum," not that testimony found credible must be accepted as conclusive support for an asylum claim. 358 F.3d at 727 (emphasis added) (citing 8 C.F.R. § 208.13(a) ("Burden of proof. . . . The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.")). In this case, the IJ found Mr. Tello credible, but the IJ also stated that his testimony was "sketchy, not corroborated and certainly did not provide the detail which the Court would desire[.]" Admin. R., Vol. 1, at 75.

The IJ found that the past incidents Mr. Tello testified about did not rise to the level of persecution. *Id.* at 81-82. Mr. Tello has not challenged this finding on appeal, so he was required to "show both a genuine, subjective fear of [future] persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Wiransane*, 366 F.3d at 893 (quotation and alterations omitted). The IJ, however,

-7-

stated that Mr. Tello's subjective fear was "not supported by objective and credible evidence that he should have that fear." Admin. R., Vol. 1, at 80. Indeed, the IJ stated that the general record evidence about Peru "contradicted" Mr. Tello's expressed fear, because that evidence "clearly show[ed that] the government of Peru has been spending, and is spending, much of [its] resources, energy and time on controlling . . . the terrorism with respect not only to the Shining Path[,] but with other terrorist[] organizations within the country of Peru." *Id.* at 79-80. The IJ also noted that Mr. Tello's sister is a police officer in Peru, and Mr. Tello should have corroborated his testimony of a physical attack in January 2003. *Id.* at 84-85. Further, the IJ noted that even if Mr. Tello's attackers yelled platitudes about the Shining Path, that did not establish that they targeted *him* on account of *his* past political activity. *Id.* at 85.

Based upon our review of the record and the IJ's decision under the law as it stood before the enactment of the REAL ID Act, we conclude that the IJ did not err by expecting Mr. Tello to have corroborated key aspects of his claim. To the extent that the IJ found part of Mr. Tello's testimony not credible without corroboration, the IJ gave "specific, cogent reasons" for doing so. *See Wiransane*, 366 F.3d at 897 (quotation omitted). Based upon our review of the evidence, we are not compelled to conclude that the IJ's findings of fact are erroneous.

The petition for review is DENIED.

Entered for the Court


John C. Porfilio
Senior Circuit Judge