FILED
United States Court of Appeals
Tenth Circuit

June 18, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JIN BIN WU,

  Petitioner,

v.

ERIC H. HOLDER, JR., United States
Attorney General,

  Respondent.

No. 11-9572
(Petition for Review)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **PORFILIO**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

Jin Bin Wu petitions for review of a Board of Immigration Appeals (BIA) decision upholding an order for his removal. The BIA dismissed Mr. Wu's appeal from an Immigration Judge's (IJ's) denial of asylum and restriction on removal. We deny the petition for review for the reasons explained below.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

## AGENCY PROCEEDINGS

Mr. Wu is a native and citizen of the People's Republic of China.  He entered the United States without being admitted or paroled after inspection in July 2005, rendering him subject to removal under 8 U.S.C. § 1182(a)(6)(A)(i).  Less than a year later he applied for asylum, restriction on removal,[1] and relief under the United Nations Convention Against Torture (CAT).  He claimed persecution on account of his resistance to China's family planning policy.  At the hearing before the IJ, he testified that in late December 2004, when authorities learned that his wife had become pregnant after already having a son, family planning officers came to their home to take her for an abortion.  He and his wife ineffectually resisted.  He initially pleaded with the officers not to take her.  They did not relent and he began to chastise them, using some derogatory language, for persecuting innocent citizens.  When they pushed past him and took hold of his wife, a scuffle ensued.  The officers restrained Mr. Wu, who hit one and kicked another (he testified the blows were inadvertent) before falling to the floor.  At that point, neighbors crowded around and he got to his feet and ran.  An officer yelled to another to catch and arrest him.  He was chased for five to ten minutes, but eventually got away.  He hid with friends for several months and then began a lengthy journey to the United States.

---

[1]     We use the newer statutory terminology of "restriction on removal" in place of the superseded terminology of "withholding of removal."  *See Razkane v. Holder*, 562 F.3d 1283, 1285 n.1 (10th Cir. 2009).

His wife had the abortion the day after she was taken by the family planning officers. She has since stayed at their home with their son, apparently without any repercussions from the incident. Mr. Wu testified that his wife has told him that unidentified family planning officers (not police) had looked for him at their home, his mother's home, and his brother's home, and have continued to come looking for him three to four times a year, the last time some three months before the hearing. They told his wife to tell him to return home. He testified that he believed the officers intended to arrest him upon his return, and later added that they told his wife and family that he would be arrested. He confirmed their authority to make arrests, but also admitted that he did not know anyone who had been arrested. He submitted a letter signed by several of his former neighbors in China vouching for his account of the incident leading to his wife's abortion, which also stated that "[t]he officials wanted to arrest" him that night and that he "cannot return home, because the officials want to arrest him." Admin. R. at 628.

The IJ found that Mr. Wu had established neither past persecution nor a well-founded fear of future persecution, denied all requested relief, and ordered Mr. Wu removed. On appeal to the BIA, Mr. Wu did not challenge the IJ's finding as to the lack of past persecution or the IJ's denial of relief under the CAT. As for future persecution, the BIA agreed with the IJ that Mr. Wu's fear of arrest was not well-founded, and added that there was no evidence an arrest would entail adverse consequences rising to the level of persecution in any event. Accordingly, the BIA

upheld the denial of asylum and restriction on removal and dismissed Mr. Wu's appeal. The BIA also refused to consider additional documentation that Mr. Wu had submitted in connection with a motion to reopen/reconsider then still pending before the IJ.[2]

## GOVERNING LEGAL STANDARDS

Because the BIA's decision was issued by a single member, *see* 8 C.F.R. § 1003.1(e)(5), we "review[] both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion," *Dallakoti v. Holder*, 619 F.3d 1264, 1267 & n.1 (10th Cir. 2010). In doing so, "[w]e review the BIA's legal determinations de novo and its findings of fact for substantial evidence." *Id.* at 1267. The latter standard is very deferential: "factual findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* And it applies not only to historical facts but to ultimate factual determinations, including, as relevant here, whether an alien has demonstrated persecution to support a request for relief from removal. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009) (citing line of Tenth Circuit authority).

An alien like Mr. Wu, who has not been forced to undergo an abortion or an involuntary sterilization, or been persecuted for refusing to do so, may still establish eligibility for asylum based on governmental population control activities by showing

---

[2] The BIA held that additional evidence could not be accepted on appeal and, further, that a remand of the case to the IJ was not warranted because the evidence was neither unavailable nor undiscoverable previously, 8 C.F.R. § 1003.2(c)(1), (4).

- 4 -

that he has been persecuted for "resistance to a coercive population control program." 8 U.S.C. § 1101(a)(42)(B); *see Zhi Wei Pang v. Holder*, 665 F.3d 1226, 1230 (10th Cir. 2012).  To qualify for asylum on this basis, Mr. Wu had to "demonstrate that (1) he resisted China's coercive population control program, (2) he suffered or has a well-founded fear that he will suffer persecution by the Chinese Government, and (3) such persecution was [or will be] inflicted on account of his resistance." *Zhi Wei Pang*, 665 F.3d at 1230-31 (internal quotation marks and ellipses omitted). "Because the BIA assumed that [Mr. Wu's] conduct in China constituted resistance, our analysis focuses on . . . persecution."  *Id.* at 1231.  And because Mr. Wu does not claim past persecution, we focus solely on whether the finding that he lacked a well-founded fear of future persecution was supported by substantial evidence—with no presumption of future persecution based on past events, *see* 8 C.F.R. § 1208.13(b)(1).  To be well-founded, such a fear requires "a reasonable possibility" that the alien would be persecuted upon removal to his country of nationality.  *Id.* § 1208.13(b)(2)(i)(B); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 440 (1987).

## ANALYSIS

### A.  Denial of Asylum

The BIA found Mr. Wu's case for asylum based on fear of future persecution deficient for two distinct reasons:  (1) "the record evidence did not provide sufficient objective support for [Mr. Wu's] belief that he faces a reasonable possibility of being arrested because of his altercation with family planning officials in 2004"; and (2) he

- 5 -

"did not, in any event, testify with any specificity as to his reasonable fear that if he were arrested upon his return to China, his arrest would lead to treatment that would rise to the level of persecution as this term is defined." Admin. R. at 5. As each of these rationales is sufficient to support the BIA's decision, we may affirm on either basis. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 (10th Cir. 1994) (holding agency decision based on two independently sufficient grounds may be affirmed on one "regardless of the merit of [the litigant's] arguments relating to [the other]").

### 1. Possibility of arrest

The BIA recited several considerations leading to its conclusion that Mr. Wu had failed to substantiate a reasonable possibility of arrest. His testimony in this regard "primarily relied on hearsay statements from his family and wife" and "lacked details as to who these individuals were who he claimed have been continuously visiting his family and wife; . . . what they wanted [him] to do once he returned home; and . . . what they intended to do to [him] once he was found." Admin. R. at 3-4. The BIA stated that he never "testif[ied] that his family was in fact told that he will be arrested"; rather "it was only [his] belief that he will be arrested." *Id.* at 4. As for the letter submitted by his former neighbors, "neither their letter nor [his] testimony provided the foundation for the neighbors' otherwise speculative belief regarding the authorities' current and prospective interest in [Mr. Wu] years after his departure from the country." *Id*. (citing "*Matter of H-L-H & Z-Y-Z*, 25 I&N Dec. 209, 215-17 (BIA 2010) (letters from friends do not provide substantial support for

applicant's claim of fear of persecution when devoid of details, and where they are not subject to cross-examination)"). The BIA also cited the 2007 Profile of Asylum Claims and Country Conditions ("2007 Profile"), which states that criminal penalties are not imposed "on families that do not comply with the birth planning law" in Mr. Wu's home province. Admin. R. at 276.[3] And Mr. Wu admitted "that he did not know anyone who was arrested for violating the family planning rules." *Id*. at 4. Finally, the BIA noted that "there is no indication that [Mr. Wu's] wife, who [he] testified also attempted to physically resist the family planning officials, was herself arrested or faced criminal sanctions because she too resisted the enforcement efforts of the family planning officials." *Id.* at 5. at 9 (citation omitted).

On its face, the above evidence provides substantial support for the BIA's conclusion that Mr. Wu had not established a reasonable possibility of arrest. Mr. Wu does, however, point out certain problems lurking behind the BIA's stated rationale. The most troubling is the BIA's flat misstatement of the record when it said Mr. Wu never testified that his family had been told he would be arrested, so that his fear in this respect rested solely on his own personal belief. Actually, when

---

[3]     Mr. Wu had objected to the IJ's reliance on the 2007 Profile instead of the 2002 Population and Family Planning Regulations of Fujian Province ("2002 PFPR"), which indicated that impeding execution of family planning policies and insulting or injuring family planning officers were criminal acts. Admin. R. at 308. The BIA followed the IJ in "according greater weight to the text of the 2007 Profile, which more aptly reflect[s], and relevantly inform[s], how the provisions of the 2002 PFPR have been applied or enforced since it came into effect in September 2002." *Id.* at 4-5.

squarely asked "Did they [family planning officials] ever directly say that you would be arrested," he responded "Yes. They told that to my wife, and my family." Admin. R. at 167. This also undercuts the BIA's criticism that Mr. Wu's testimony lacked specificity as to what the authorities intended to do to him if they found him: he said they intended to arrest him. Of course, his claim in this critical respect is still premised on hearsay, as the BIA pointed out.

Mr. Wu also advances a legitimate objection to the BIA's reliance on the 2007 Profile's assurance that criminal penalties are not imposed for violating the family planning policy. He emphasizes that he is not claiming he will be arrested for a violation of family planning policy, but that he will be arrested for impeding, insulting, and assaulting family planning officers—conduct not addressed by the 2007 Profile. And the 2002 PFPR makes this very distinction: violations of family planning policy (failure to implement effective contraceptive measures or terminate an unauthorized pregnancy, giving birth in violation of regulations) trigger only administrative correction, Admin. R. at 306-08 (Articles 39 & 43), while impeding, insulting, or injuring family planning officers is "a criminal act [and] criminal responsibility shall be determined," *id*. at 308 (Article 46). The BIA "disagree[d] that any such distinction is material," "not[ing] that the PFPR has grouped both types of offenses under the same section it labeled as 'Legal Liability,' and thus both can be considered as violative of the family planning regulations." *Id*. at 4. But the fact that the PFPR sets out both administrative violations of family planning regulations

and criminal offenses involving interference with family planning authorities in the same "Legal Liability" section in no way alters the material point that the PFPR clearly distinguishes the former as administrative and the latter as criminal (and that the 2007 Profile refers only to the former).[4]

In short, as to the possibility of arrest, the BIA misstated the quality of Mr. Wu's testimony and failed to recognize documentary support for it. We need not decide whether we might nevertheless affirm on the basis that, properly considering this evidence and the rest of the record, the BIA would have reached the same result. *Cf. Uanreroro v. Gonzales*, 443 F.3d 1197, 1208 (10th Cir. 2006) (remanding for agency redetermination of factual matter where reasoning underlying initial determination was flawed, instead of "step[ping] into the agency's role and engag[ing] in our own fact-finding")). The BIA's alternative rationale for rejecting Mr. Wu's future-persecution claim is not tainted by the problems noted above.

### 2. Possibility of persecution if arrested

"[P]ersecution requires the infliction of suffering or harm . . . in a way regarded as offensive and must entail more than just restrictions [on] or threats to life and liberty." *Wiransane v. Ashcroft*, 366 F.3d 889, 893 (10th Cir. 2004) (internal quotation marks omitted). More directly to the point, an arrest or threat of arrest

---

[4] Indeed, the PFPR's "Legal Liability" section includes many other criminal offenses relating to family planning activities, such as embezzlement, extortion, bribery, fraud, and misappropriation of funds. Admin. R. at 309 (Article 48). Surely these are still handled as criminal matters notwithstanding the 2007 Profile's statement that family planning violations are not treated as crimes.

- 9 -

does not in itself entail persecution. *See, e.g.*, *Kapcia v. INS*, 944 F.2d 702, 704-05, 708 (10th Cir. 1991); *Jian Qiu Liu v. Holder*, 632 F.3d 820, 821-22 (2d Cir. 2011); *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1290-91 (11th Cir. 2006); *Dandan v. Ashcroft*, 339 F.3d 567, 573-74 (7th Cir. 2003); *Prasad v. INS*, 47 F.3d 336, 339-40 (9th Cir. 1995). Thus, as *Jian Qiu Liu* in particular illustrates, it is not enough for a Chinese asylum seeker like Mr. Wu to demonstrate a reasonable possibility that he may be arrested, detained, and/or questioned by authorities regarding his momentary resistance to family planning officers when they took his wife for a forced abortion. He must substantiate an associated risk of harm and/or at least extended confinement. *Cf. Nazaraghaie v. INS*, 102 F.3d 460, 463-64 (10th Cir. 1996) (indicating that arrest followed by beating and ten months' detention amounted to persecution).

Mr. Wu made no effort to do this. His testimony never touched on the possibility of extended confinement or any physical punishment. He attempts to fill this gap in his case now by suggesting that if he is arrested, the authorities "could take liberties with him and harm him severely." Aplt. Br. at 10. Not only does this come late, but such unsubstantiated speculation cannot satisfy Mr. Wu's burden to offer "*specific facts* sufficient to demonstrate" an entitlement to asylum. *Uanreroro*, 443 F.3d at 1205 (quoting 8 U.S.C. § 1158(b)(1)(B)(ii)) (emphasis added). In short, "[b]ecause [Mr. Wu] provided no evidence regarding the risks associated with an arrest of uncertain duration, . . . [he] did not establish a threat of persecution." *Xiu Fen Xia v. Mukasey*, 510 F.3d 162, 166 (2d Cir. 2007). *A fortiori*, he cannot satisfy

- 10 -

his burden on judicial review to point to evidence from which a reasonable factfinder would have been *compelled* to find a fear of persecution entitling him to asylum.

### 3.  Conclusion as to denial of asylum

Certain analytical errors taint the BIA's determination that Mr. Wu failed to establish a reasonable possibility of arrest for his resistance to the forced abortion of his wife in 2004.  We need not decide whether affirmance of the denial of asylum on that basis might still be proper, as the BIA's decision rested on an alternative determination unaffected by the cited errors.  The BIA also held that Mr. Wu failed to establish a reasonable possibility that if he were arrested over the 2004 incident he would be subjected to conduct rising to the level of persecution.  We conclude that substantial evidence supports this alternative rationale for the denial of asylum.

## B.  Denial of Restriction on Removal

An alien subject to removal can prevent his return to a particular country by establishing "a clear probability of persecution" should he be sent there.  *Wiransane*, 366 F.3d at 894 (internal quotation marks omitted).  This standard of proof for restriction on removal "is more demanding than the well-founded fear standard applicable to an asylum claim."  *Id.*  Thus when, as here, an alien "fails to establish the objective component of a well-founded fear of persecution, he necessarily fails to establish entitlement to restriction on removal."  *Id*.  The BIA therefore properly denied Mr. Wu's request for restriction on removal to China.

## C. Refusal to Consider New Materials or Remand Case

Mr. Wu's briefing to the BIA referenced new evidence that he had submitted in support of a motion to reopen still pending with the IJ. The BIA "properly has procedural rules governing the introduction of evidence, and under those rules [new items of evidence submitted on appeal to the BIA] [ar]e not timely submitted." *Solomon v. Gonzales*, 454 F.3d 1160, 1164 (10th Cir. 2006). The BIA nevertheless construed Mr. Wu's reference to the new evidence as a motion for the BIA to remand the case, which it denied. We review such a ruling for an abuse of discretion.[5] *Clifton v. Holder*, 598 F.3d 486, 490 (8th Cir. 2010). The BIA noted that Mr. Wu had not shown that the new evidence was previously unavailable or undiscoverable, as required by 8 C.F.R. § 1003.2(c)(1). Mr. Wu admits that "the BIA's viewpoint here is understood," but insists that "at the least the BIA ought to have accepted [a second] letter signed by the 3 neighbors as such evidence had, essentially, already been submitted and admitted into the record." Aplt. Br. at 20. But in arguing this way, Mr. Wu effectively concedes that the evidence could not satisfy the other requirement for new evidence, i.e., that it be *material*. 8 C.F.R. § 1003.2(c)(1).

---

[5]     The BIA's discretionary authority in this regard derives from a regulation, 8 C.F.R. § 1003.2(c)(1) & (4), rather than from a statute. For this reason, our review is not prohibited by the jurisdictional bar in 8 U.S.C. § 1252(a)(2)(B), which, as the Supreme Court clarified in *Kucana v. Holder*, 130 S. Ct. 827, 831-40 (2010), applies only to decisions made discretionary by the statutory provisions referenced therein, not to decisions the Attorney General has made discretionary by regulation. *See also Luevano v. Holder*, 660 F.3d 1207, 1213 (10th Cir. 2011) (holding discretionary denial of continuance reviewable in light of *Kucana*).

Cumulative evidence is not material.  *See Lin Xing Jiang v. Holder*, 639 F.3d 751, 756 (7th Cir. 2011).  In any event, the BIA did not foreclose Mr. Wu's use of the evidence, which as noted, was already before the IJ in connection with his motion to reopen.  In sum, the BIA properly refused to consider the new evidence on appeal and did not abuse its discretion in declining to remand the matter to the IJ before whom Mr. Wu's motion to reopen was pending.

The petition for review is DENIED.

Entered for the Court


Mary Beck Briscoe
Chief Judge