FILED
United States Court of Appeals
Tenth Circuit

April 21, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TARIK RAZKANE,

      Petitioner,

    v.

ERIC H. HOLDER, JR.,[*] United States
Attorney General,

      Respondent.

No. 08-9519

---

**PETITION FOR REVIEW OF AN ORDER FROM
THE BOARD OF IMMIGRATION APPEALS**

---

Jayne E. Fleming, Reed Smith LLP, Oakland, California, for Petitioner.

Barry J. Pettinato, Assistant Director (Monica G. Antoun, Trial Attorney, with
him on the brief), United States Department of Justice, Civil Division, Office of
Immigration Litigation, Washington, D.C., for Respondent.

---

Before **BRISCOE**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

[*]Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr., is substituted for
Michael B. Mukasey as United States Attorney General, effective February 3,
2009.

## I.  INTRODUCTION

Petitioner Tarik Razkane remained in the United States beyond the period authorized by his non-immigrant visa.  After receiving a notice to appear from the Department of Homeland Security charging him as removable under 8 U.S.C. § 1227(a)(1)(B), Razkane applied for, *inter alia*, restriction on removal pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3).  The Immigration Judge ("IJ") denied Razkane's request for restriction on removal. The IJ determined Razkane had not made the necessary showing that it was more likely than not he would be persecuted on account of his membership in a particular social group, homosexuals, upon return to Morocco.  Razkane appealed the IJ's decision to the Board of Immigration Appeals ("BIA").  The BIA issued a brief order adopting and affirming the IJ's decision.  Exercising jurisdiction pursuant to 8 U.S.C. § 1252, we **reverse** the decision of the BIA and **remand** for proceedings consistent with this opinion.

## II.  BACKGROUND

Razkane was admitted to the United States on a non-immigrant J-1 visa on August 4, 2003.  On December 30, 2004, the Department of Homeland Security served upon Razkane a Notice to Appear, charging him as removable under 8 U.S.C. § 1227(a)(1)(B) for staying in the country beyond the period for which he was authorized to remain pursuant to his visa.  Razkane admitted he stayed in the United States without authorization, and applied for asylum, restriction on

removal,[1] and voluntary departure under the INA, and protection under the United Nations Convention Against Torture ("CAT").

In removal proceedings before the IJ, Razkane explained he was born and raised in Morocco. He was not open with his friends, family members, or community about his sexuality because homosexuality is perceived as deviant behavior in Morocco. He avoided dating and kept his contacts with gay men to a minimum. Despite his efforts to hide his sexual orientation, Razkane was attacked by a neighbor. The neighbor came up behind Razkane, held a knife to his neck, and told him "[his] death is better than [his] life since [he is] gay." The neighbor was eventually persuaded to release Razkane, and the neighbor's family later apologized for the incident. Razkane believed the neighbor became suspicious of his sexual orientation after seeing him with gay male friends. Razkane was haunted by fear of more attacks, social ostracism, family rejection, and imprisonment because of his sexual orientation. He sought a way to study in the United States, and eventually entered the country under the Fulbright Program.

---

[1]"Restriction on removal was known as *withholding of removal* before amendments to the INA made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, 100 Stat. 3009." *Ismaiel v. Mukasey*, 516 F.3d 1198, 1200 n.2 (10th Cir. 2008). Although "[t]he regulations under the INA . . . retain the former term *withholding of removal*, *see*, *e.g.*, 8 C.F.R. § 208.16(b), and both the IJ and the BIA have referred to *withholding of removal*," this court uses the statutory term "*restriction on removal*." *Ismaiel*, 516 F.3d at 1200 n.2.

Razkane submitted evidence during his removal proceedings regarding the treatment of homosexuals in Morocco. Specifically, through expert testimony and affidavits Razkane presented evidence indicating Morocco is an overwhelmingly Islamic country. Razkane's expert on country conditions testified that "[m]ost orders of Islam, including those practiced in Morocco, view homosexuality as an abomination, a violation of the natural order intended for mankind by Allah." In addition, Moroccan law criminalizes homosexual conduct. Razkane also submitted evidence indicating that merely flirting with a member of the same sex or socializing with other homosexuals may result in imprisonment. Additional evidence demonstrated that due to Moroccan society's views regarding homosexuality, those suspected of being homosexual have been harassed, beaten, raped, and even killed. This evidence indicated that police protection of homosexuals is often non-existent, and "it is common for the police to harm, beat or rape with impunity the people whom they see as vulnerable because of sexual orientation."

In denying Razkane's application for asylum, the IJ concluded Razkane's application was filed after the one-year filing deadline, and Razkane did not meet any of the deadline exceptions. In determining whether to grant Razkane restriction on removal or CAT protection, the IJ considered whether Razkane had been persecuted in the past on account of his membership in a particular social group, homosexuals, and whether it was more likely than not that he would be

persecuted or tortured upon return to Morocco. The IJ first determined Razkane had not been subjected to past persecution because the attack he suffered had not resulted in injury and the family of the assailant apologized.

On the issue of whether Razkane would more likely than not be persecuted on account of his membership in a particular social group or tortured upon return to Morocco, the IJ first recognized the BIA has indicated homosexuals can constitute a particular social group for restriction on removal claims. The IJ went on to distinguish Morocco, which criminalizes homosexual conduct, from a country that persecutes homosexuals because of their status as homosexuals. The IJ explained that while the status/conduct distinction would not necessarily require denial of restriction on removal, Razkane could not show his status as a homosexual would likely lead to persecution in Morocco.

This conclusion was based on a series of findings by the IJ. First, although the IJ found Razkane to be "an essentially credible witness" who "attempted to testify carefully and honestly before the Court," he determined one aspect of Razkane's testimony was not "convincing." The government asked multiple questions involving the assumption that certain individuals appear "gay." Specifically, at one point, the government's lawyer asked Razkane if Moroccan people would identify him as gay by the way he talked, dressed, and moved. Razkane answered in the affirmative. The government lawyer went on to ask Razkane's country conditions expert his opinion as to what would happen to

someone who "looked . . . gay" while walking the streets in Morocco, to which the expert responded "Ma'am, I'm sorry, I can't help you with that. I just don't know what it means to look like a gay." In his oral ruling, the IJ found Razkane's "appearance does not have anything about it that would designate [him] as being gay. [He] does not dress in an effeminate manner or affect any effeminate mannerisms."

In addition, the IJ noted Razkane had not had "any boyfriends or other gay encounters in Morocco" and although he had engaged in homosexual conduct in the United States, "he has had no boyfriends" and did not "appear to be committed to any particular homosexual relationship." The IJ stated Razkane "testified that he would probably be 'involved' in homosexual activity if he returned to Morocco." Nevertheless, the IJ found that Razkane had not "shown that it is more likely than not that he would be engaged in homosexuality in Morocco or, even if he was, that it would be the type of overt homosexuality that would bring him to the attention of the authorities or of the society in general."

The IJ concluded Razkane failed to prove it was more likely than not "he would be identified as a homosexual in Morocco, or that he would be persecuted in that country because of his social group membership" as required for restriction on removal under the INA or be "faced with torture by the government or with its acquiescence" as required for restriction on removal under the CAT.

-6-

Thus, the IJ denied Razkane's applications for asylum, restriction on removal, and CAT protection, but granted him voluntary departure.

Razkane appealed the IJ's decision to the BIA, which dismissed the appeal. In addressing Razkane's claim for restriction on removal, the BIA stated only that it agreed with the IJ "that the alleged mistreatment is insufficient to rise to the level of persecution necessary to meet the burden of proof for [restriction on] removal." Razkane timely petitioned this court for review. He challenges only the denial of his claim for restriction on removal under the INA.

## III. DISCUSSION

This court reviews the BIA's legal determinations de novo, and findings of fact under a substantial-evidence standard. *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion. *Sidabutar v. Gonzales*, 503 F.3d 1116, 1123 (10th Cir. 2007). We may consult the IJ's decision to give substance to the BIA's reasoning. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "This is especially appropriate where the BIA incorporates by reference the IJ's rationale or repeats a condensed version of its reasons while also relying on the IJ's more complete discussion." *Id.* Because the BIA, through a single member, issued only a brief order adopting the IJ's decision, our analysis focuses on the IJ's decision.

"To obtain a restriction on removal . . . [a noncitizen] must establish a clear probability of persecution in that country on the basis of race, religion, nationality, membership in particular social group, or political opinion." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (quotation omitted). "The question under [the clear-probability] standard is whether it is more likely than not that the [noncitizen] would be subject to persecution" upon return to the country. *INS v. Stevic*, 467 U.S. 407, 424 (1984). Neither party disputes that homosexuals constitute a particular social group under the INA. Rather, the parties dispute whether the IJ erred in his analysis of whether it was more likely than not Razkane would be persecuted on account of his membership in this social group upon return to Morocco.

While the IJ stated there is an important distinction between a country like Morocco with laws that criminalize homosexual conduct and a country that persecutes homosexuals because of their homosexual status, he proceeded to explain that this distinction did not require denial of Razkane's claim.[2] After noting the distinction, the IJ proceeded to a predicate consideration of whether Razkane would be identified in Morocco as a homosexual, presumably by

---

[2]After discussing the status/conduct distinction the IJ stated, "The Court does not believe that this distinction would necessarily require a denial of the withholding application if the respondent were able to show that his status as a homosexual would inevitably lead to persecution in Morocco." In light of this, it is unclear why the IJ even raised the purported distinction.

Moroccan authorities or society, and thus might be persecuted.[3]  In determining

whether Razkane would be identified as a homosexual, however, the IJ relied on

his own views of what would identify an individual as a homosexual rather than

any evidence presented.  Specifically, the IJ found there was nothing in Razkane's

appearance that would designate him as being gay because he did not "dress in an

effeminate manner or affect any effeminate mannerisms."

The Second Circuit recently addressed the propriety of similar findings and

comments by an IJ.  *Ali v. Mukasey*, 529 F.3d 478, 485, 491-92 (2d Cir. 2008).  In

*Ali*, the petitioner sought relief pursuant to the CAT based on his fear that he

would be tortured because of his sexual orientation if he was returned to Guyana.

*Id.* at 484.  The court stated the IJ's comment that the "common

understanding . . . would suggest that violent dangerous criminals and feminine

contemptible homosexuals are not usually considered to be the same people"

reflected "stereotypes about homosexual orientation and the way in which

---

[3]The IJ ended his fact-finding at this predicate stage because he found that
Razkane would not be identified as a homosexual and thus necessarily not
persecuted as such.  The IJ's finding that Razkane would not be identified as a
homosexual was not premised on Razkane's ability to suppress indicia of
homosexuality, a notion which has been severely criticized.  *See Karouni v.
Gonzales*, 399 F.3d 1163, 1173 (9th Cir. 2005); *Hernandez-Montiel v. INS*, 225
F.3d 1084, 1093 & n.6 (9th Cir. 2000), *overruled on other grounds by Thomas v.
Gonzales*, 409 F.3d 1177, 1187 (9th Cir. 2005).  Were the IJ to have found that
Razkane would be identified as a homosexual, but nonetheless denied relief
because Moroccan law criminalizes homosexual conduct and not homosexual
status, the status/conduct distinction drawn by the IJ would merit careful scrutiny.

homosexuals are perceived." *Id.* at 491. This, along with a further remark by the IJ that "no one would perceive [the petitioner] as a homosexual unless he had a partner or cooperating person[,]" demonstrated the IJ "clearly abrogated his responsibility to function as a neutral, impartial arbiter." *Id.* at 491-92 (quotations omitted). The court concluded the IJ's comments reflected "an impermissible reliance on preconceived assumptions about homosexuality and homosexuals," which along with other negative comments about the petitioner, "result[ed] in the appearance of bias or hostility such that [the court could not] conduct a meaningful review of the decision below." *Id.* at 492 (quotation omitted). Similarly, the Eighth Circuit reversed the denial of an application for asylum and restriction on removal that was based in part on "the IJ's personal and improper opinion that [the applicant] did not dress or speak like or exhibit the mannerisms of a homosexual." *Shahinaj v. Gonzales*, 481 F.3d 1027, 1029 (8th Cir. 2007).

The IJ's homosexual stereotyping likewise precludes meaningful review in this case. The IJ's reliance on his own views of the appearance, dress, and affect of a homosexual led to his conclusion that Razkane would not be identified as a homosexual. From that conclusion, the IJ determined Razkane had not made a showing it was more likely than not that he would face persecution in Morocco. This analysis elevated stereotypical assumptions to evidence upon which factual inferences were drawn and legal conclusions made. To condone this style of

judging, unhinged from the prerequisite of substantial evidence, would inevitably lead to unpredictable, inconsistent, and unreviewable results. The fair adjudication of a claim for restriction on removal is dependent on a system grounded in the requirement of substantial evidence and free from vagaries flowing from notions of the assigned IJ. Such stereotyping would not be tolerated in other contexts, such as race or religion. *See*, *e.g.*, *Cosa v. Mukasey*, 543 F.3d 1066, 1069 (9th Cir. 2008) (reversing adverse credibility finding because it improperly "stemmed from pure speculation about how a [member of the petitioner's religion] might look and act"); *Huang v. Gonzales*, 403 F.3d 945, 949 (7th Cir. 2005) ("[The IJ's] personal beliefs or some perceived common knowledge about the religion . . . [are] . . . not a proper basis for an adverse credibility finding."). Nor will it be tolerated in the case of a homosexual applicant seeking restriction on removal. *See Ali*, 529 F.3d at 492; *Shahinaj*, 481 F.3d at 1029. As a consequence, remand is necessary so that all findings are based on evidence and subject to meaningful review.

## IV. CONCLUSION

For the reasons discussed above, we **reverse** the decision of the BIA and **remand** for proceedings consistent with this opinion. If on remand the BIA concludes further consideration by an IJ is warranted, this matter should be reassigned to a different IJ. *See Ali*, 529 F.3d at 493 (instructing the BIA to assign the case to a different IJ on remand to ensure an unbiased proceeding);

*Huang v. Gonzales*, 453 F.3d 142, 151 (2d Cir. 2006) ("[T]he authority of courts to review the decisions of officers exercising adjudicative functions includes the power to require reassignment when necessary to avoid repetition of a biased discharge of those functions or even to avoid the appearance of substantial injustice.").

During the pendency of this appeal, this court entered a temporary stay of removal. That temporary stay will remain in effect while this court has jurisdiction and will expire upon issuance of the mandate.