**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 7, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ARACELI JERVANDITA
VELASQUEZ-RAMIREZ,

     Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

     Respondent.

No. 14-9595
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **PORFILIO**, and **PHILLIPS**, Circuit Judges.
_____

Petitioner Araceli Velasquez-Ramirez is a native and citizen of El Salvador

who entered the United States illegally. She applied for asylum, withholding of

removal, and relief under the United Nations Convention Against Torture ("CAT")

on the grounds that she fled El Salvador to escape an abusive domestic relationship.

The immigration judge ("IJ") found that she did not testify credibly and denied her

application. The Board of Immigration Appeals ("BIA") determined that the IJ's

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

adverse credibility determination was not clearly erroneous and dismissed

Ms. Velasquez-Ramirez's appeal. Exercising our jurisdiction under 8 U.S.C. § 1252,

we agree with the BIA's decision and deny the petition for review.

## I.     Factual and Procedural Background

Ms. Velasquez-Ramirez is a native and citizen of El Salvador. She

entered the United States illegally via Texas on April 1, 2010. The Department of

Homeland Security initiated removal proceedings against her under 8 U.S.C.

§ 1182(a)(7)(A)(i)(I) because she did not have valid entry documents.

Ms. Velasquez-Ramirez conceded removability before the immigration court but

applied for asylum, withholding of removal, and protection under CAT. She alleged

that she fled El Salvador to escape an abusive relationship with her husband, Pedro

Lopez,[1] and is afraid he will hurt or kill her if she returns.

At her hearing before the IJ, Ms. Velasquez-Ramirez testified about her

relationship with Mr. Lopez and her journey to the United States. The crux of her

testimony is that she moved in with Mr. Lopez shortly after meeting him in January

2009 because he threatened to harm her family members if she did not. He then

abused her verbally, physically, and sexually and kept her isolated from her family

and friends—even locking her in the house while he was at work or out drinking.

Ms. Velasquez-Ramirez did not inform her family or the police about the threats or

mistreatment because she was afraid he would inflict further harm on her or carry out

---

[1] Mr. Lopez and Ms. Velasquez-Ramirez were not married, but they lived together. We refer to Mr. Lopez as Ms. Velasquez-Ramirez's "husband" to be consistent with the IJ's and the BIA's orders.

his threats to harm her family members. In March 2010, she was able to escape when Mr. Lopez forgot to lock the door. She took her passport and money that she had hidden under a mattress and traveled to the United States through Guatemala and Mexico.

The IJ issued a detailed written order denying Ms. Velasquez-Ramirez's requests for relief and ordering that she be removed to El Salvador. The IJ considered her testimony in the aggregate and characterized it as "vague, evasive, and inconsistent," noting that "[h]er inconsistency and lack of detail casts doubt on her entire testimony." R. at 64, 66. The IJ provided examples of material inconsistences on two topics: (1) when and how Ms. Velasquez-Ramirez obtained her El Salvadorian passport; and (2) whether she ever saw a doctor after Mr. Lopez abused her.

With respect to her passport, Ms. Velasquez-Ramirez initially testified that she obtained the passport before she met Mr. Lopez and had it with her when she went to live with him in February 2009, though she could not recall when she acquired it. But after the court noted that the passport was issued in March 2010, she changed her story. She then testified that Mr. Lopez allowed her to travel two hours by bus to get the passport in March 2010 (three or four days before she escaped) because he had not yet started abusing or hitting her. Her recollection of the time frame of abuse changed though, and she later testified to the contrary that Mr. Lopez was in fact abusing her in March 2010. Her testimony about when she got the identification card she used to obtain the passport was similarly inconsistent.

3

Regarding doctors' visits, Ms. Velasquez-Ramirez initially testified that she never went to a doctor after any of the beatings because Mr. Lopez would not allow it. But she then recalled telling a Denver counselor that she had seen a doctor in El Salvador because the beatings aggravated some cysts in her breasts. Documentary evidence contradicted this testimony though: an affidavit by that doctor stated instead that she visited him because she had a minor bruise on her back. Ms. Velasquez-Ramirez also wavered about whether Mr. Lopez accompanied her to the doctor. Her statements about the frequency of the abuse were likewise inconsistent; at one point she estimated there were ten instances, but at other points she testified that the abuse occurred regularly.

After citing these examples, the IJ made "a firm finding" that Ms. Velasquez-Ramirez had not testified credibly and that her documentary evidence failed to overcome the material inconsistencies in her testimony. R. at 66.[2]

A single member of the BIA affirmed the IJ's decision based solely on the credibility determination and adopted much of the IJ's reasoning in finding a lack of credibility. After reciting some of the specific examples of inconsistent testimony that the IJ provided to demonstrate that Ms. Velasquez-Ramirez was not credible, the

---

[2] The IJ also made several alternative findings about Ms. Velasquez-Ramirez's failure to establish that she belongs to a protected social group such that she is a refugee under section 101(a)(42) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42), and her failure to satisfy her burden of proof for withholding of removal and CAT, stating that the alternative findings were intended for use "[i]n the event a reviewing court disagrees with this Court's credibility determination." R. at 66–68. Because the BIA affirmed the credibility determination, it did not address the alternative findings.

BIA concluded that the record supported the IJ's adverse credibility finding and that the finding was not clearly erroneous. The BIA did not address the other aspects of the IJ's order, except to reject the argument that the IJ had not considered a relevant counselor's report; in fact, the record shows that Ms. Velasquez-Ramirez's own counsel directed the IJ's attention to that report during the hearing. The BIA concluded that the adverse credibility finding was sufficient to preclude all three of Ms. Velasquez-Ramirez's requests for relief: asylum, withholding of removal, and CAT.

Ms. Velasquez-Ramirez now seeks review of the BIA's decision.

## II. Discussion

The scope of our review depends on the form of the BIA's decision. *Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). This case involves a single BIA member's brief order under 8 C.F.R. § 1003.1(e)(5). We review that order as the final agency determination, limiting our review to the issues specifically addressed therein. *Diallo v. Gonzales*, 447 F.3d 1274, 1278–79 (10th Cir. 2006). We may, however, consult the IJ's decision "to give substance to the BIA's reasoning." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). For instance, because the BIA incorporated the IJ's rationale by reference and repeated a condensed version of the IJ's reasoning, we may consult the IJ's "more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

We review the BIA's legal conclusions de novo. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). We review the BIA's findings of fact—including

5

its credibility determinations—under the substantial evidence standard: "Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* "[T]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Rivera-Barrientos*, 666 F.3d at 645 (internal quotation marks omitted). The substantial evidence standard is "highly deferential." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004).

Ms. Velasquez-Ramirez's credibility is of prime importance in evaluating her appeal. An alien bears the burden of proving statutory eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). An alien's testimony may be sufficient to sustain her burden of proof, but only if she satisfies the IJ that her testimony "is credible, is persuasive, and refers to specific facts sufficient to demonstrate" eligibility for relief. *Id.* § 1158(b)(1)(B)(ii). "There is no presumption of credibility . . . ." *Id.* § 1158(b)(1)(B)(iii).

In making a credibility determination, the trier of fact should consider "the totality of the circumstances, and all relevant factors." *Id*. For instance, the trier of fact may base a credibility determination on:

> the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an

6

> inconsistency, inaccuracy, or falsehood goes to the heart of the
> applicant's claim, or any other relevant factor.

*Id.* "Because an alien's testimony alone may support an application for withholding of removal or asylum, the IJ must give specific, cogent reasons for disbelieving it." *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004) (citation and internal quotation marks omitted).

In her opening brief, Ms. Velasquez-Ramirez challenges the BIA's affirmance of the IJ's adverse credibility finding on two levels. First, she attempts to minimize and offer an explanation for her vacillating testimony, stating that it was likely the result of confusion, uncertainty, ambiguous questions, and an erroneous translation of the conflicting doctor's affidavit. Second, she argues that the IJ and the BIA did not properly weigh the totality of the circumstances because they failed to consider the consistent statements Ms. Velasquez-Ramirez made at her credible-fear interview, at her meeting with a Denver counselor, in her personal statement, and in her I-589 application, all of which bolster her credibility.

The IJ addressed and refuted both of these arguments. The IJ acknowledged that elapsed time, translation and interpretation issues, and cultural norms can pose a difficulty. The IJ then stated that "the inconsistencies and embellishments in [Ms. Velasquez-Ramirez's] testimony far outweigh these other considerations." R. at 64–65. The IJ provided numerous examples of material inconsistences in Ms. Velasquez-Ramirez's testimony about when and how she obtained her El Salvadorian passport—inconsistencies that caused the IJ "to doubt [her] credibility

7

as to her motivation for leaving El Salvador." R. at 65. Although the IJ deemed these inconsistencies alone to be sufficient for an adverse credibility determination, the IJ also outlined additional discrepancies in Ms. Velasquez-Ramirez's testimony about doctors' visits and the frequency of abuse.

In addition, the IJ evaluated the statements that Ms. Velasquez-Ramirez provided in her affidavit, at her credible-fear interview, and in other materials submitted with her I-589 application. And the IJ concluded that—far from being consistent—some of her testimony conflicted with or embellished those statements.

The BIA also considered and rejected these arguments, upholding the IJ's ruling despite Ms. Velasquez-Ramirez's "attempts to diminish the significance of the inconsistencies" and her contention that the IJ failed to consider other evidence like her counselor's report. R. at 3.

Ms. Velasquez-Ramirez now asks us to second-guess the adverse credibility determination. But "[w]e may not weigh the evidence, and we will not question the immigration judge's or BIA's credibility determinations as long as they are substantially reasonable." *Woldemeskel v. INS*, 257 F.3d 1185, 1192 (10th Cir. 2001). Not only was the adverse credibility determination supported by reasonable, substantial, and probative evidence, it was also well documented. The IJ acknowledged her responsibility to give "specific, cogent" reasons for her adverse credibility finding, R. at 60 (internal quotation marks omitted), and articulated those reasons in great detail. *See* R. at 64–66. In so doing, the IJ addressed most of the factors delineated in section 1158(b)(1)(B)(iii)—including the vagueness and

8

evasiveness of Ms. Velasquez-Ramirez's responses, inconsistencies between her responses and the documentary evidence, and internal inconsistencies within her testimony.

Referring back to the IJ's detailed order for a litany of specific examples, the BIA also focused on the major inconsistencies within Ms. Velasquez-Ramirez's testimony within its own order. Based on these discrepancies, the BIA concluded that "the Immigration Judge properly determined that [Ms. Velasquez-Ramirez] lacked credibility" and that the adverse credibility finding "is supported by the record." R. at 3. We agree.

## III. Conclusion

The IJ gave specific, cogent reasons for finding that Ms. Velasquez-Ramirez was not credible. The BIA highlighted several of the inconsistencies that the IJ identified and affirmed the IJ's credibility finding. After a careful review of the record in accordance with the deferential standard of review that governs us here, we see no basis to conclude that the BIA's decision was substantially unreasonable or that any reasonable adjudicator would be compelled to reach a different conclusion. The circumstances of this case readily support an adverse credibility finding.

The petition for review of the BIA's final removal order is denied.

Entered for the Court


Gregory A. Phillips
Circuit Judge

9