**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

RAHUL GURU,

      Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

      Respondent.

No. 15-9560
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of

this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Rahul Guru is a citizen of India who claims he will be persecuted as a religious

follower of Maharaj Ashutosh if he returns to India. The immigration judge (IJ)

denied his asylum application, his request for withholding of removal, and his request

for relief under the Convention Against Torture. The Board of Immigration Appeals

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(BIA) affirmed the IJ's ruling, thereby dismissing Mr. Guru's appeal. Mr. Guru has now petitioned this court for review of the BIA's decision. Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny his petition.

## I.  BACKGROUND

Mr. Guru unlawfully entered the United States on March 12, 2014, at a border checkpoint in Nogales, Arizona. On March 13, 2014, Mr. Guru was served with a Notice to Appear, which charged him as removable under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mr. Guru admitted the allegations in the Notice to Appear and conceded removability.

On June 3, 2014, Mr. Guru applied for asylum, withholding of removal, and relief under the Convention Against Torture. In this original application, Mr. Guru claimed to have been harassed and threatened due to his political affiliation with the Shiv Sena party. After retaining new counsel, Mr. Guru filed a supplemental asylum application on December 16, 2014, in which he alleged past harm and fear of future mistreatment because he is a follower of Maharaj Ashutosh, the spiritual leader of the group Divya Jyoti Jagrati Sansthan (DJJS). More specifically, Mr. Guru alleged he had been beaten and threatened by the controlling DJJS leaders in the past and feared future mistreatment, because he had threatened to expose the leaders' corruption and had accused them of murdering Ashutosh.

In a hearing held on February 24, 2015, before the IJ, Mr. Guru testified through an interpreter. The IJ found Mr. Guru credible. Mr. Guru testified that he follows Maharaj Ashutosh, a spiritual leader who taught, preached, and worked for

2

the benefit of the poor, at a place of worship known as a dera in Nurmahal, India. Mr. Guru further explained he is Hindu, but Ashutosh was not, and DJJS is a nondenominational group that accepts people of different religions.

In November 2013, Mr. Guru heard a rumor that Ashutosh had been murdered but the DJJS leaders who managed the dera were hiding Ashutosh's body. Mr. Guru testified the DJJS leaders had asserted Ashutosh was "in meditation" so they could claim he was still alive and take control of his extensive estate. Because Mr. Guru "accept[s] Ashutosh Maharaj as [his] god, and [he] wanted to find out if something bad was happening to [Ashutosh]," Mr. Guru went to the dera to confront the DJJS leaders. According to Mr. Guru, the DJJS leaders responded by threatening to kill him and telling him to stop spreading rumors that Ashutosh was sick or dead.

Mr. Guru then initiated his own investigation by using a friend to gain access to the local land ownership records, which showed the DJJS leaders had "properties worth hundreds of thousands" and "political connections all the way to the top." When Mr. Guru returned to the dera and demanded to see Ashutosh, the DJJS leaders refused. Mr. Guru responded by telling the leaders he had "proof against them" which he would publish in the newspaper. When Mr. Guru showed the DJJS leaders the paperwork, they shouted and began chasing him. Mr. Guru ran away and hid in a field for five to six hours and then returned home.

On December 20, 2013, about ten men arrived at Mr. Guru's home, two of whom he recognized from the previous encounter at the dera. Mr. Guru testified the men entered his home and "started punching and kicking" him for about "two, two

3

and a half minutes." When the men demanded the "proof" Mr. Guru had against them, Mr. Guru surrendered the documents. Mr. Guru's neighbors heard his screams and began to gather. The men then threatened to kill Mr. Guru if he did not stop following Ashutosh and left Mr. Guru's house. Mr. Guru testified he did not report the incident to the police because his father had told him the DJJS leaders were linked politically to the police.

As a result of the attack, Mr. Guru suffered internal injuries, along with injuries to his head, feet, hands and legs. Mr. Guru's neighbors took him to the hospital where he stayed overnight. After returning from the hospital, Mr. Guru stayed at home for nine or ten days and then spent about two months "in hiding" in Delhi before leaving India.

In addition to his testimony, Mr. Guru submitted several documents to the IJ, including a birth certificate, passport, identity cards, school certificates, two letters from his father stating Mr. Guru was sent abroad based on fear for his life, a medical report confirming Mr. Guru was hospitalized after the attack at his home but released the next day, and a letter from a Shiv Sena leader confirming his membership in the party. Mr. Guru also submitted various articles discussing Ashutosh and his followers. In relevant part, the articles explain that, after Mr. Guru left India in 2013, litigation was filed to require the release and cremation of Ashutosh's body, and an Indian court ordered the cremation.

After the hearing, the IJ issued an oral decision and order, accepting Mr. Guru's testimony as credible but nonetheless finding Mr. Guru failed to meet his

4

burden to establish eligibility for asylum, withholding of removal, or protection under the Convention Against Torture. The IJ first rejected Mr. Guru's application to the extent it was based on his membership in the Shiv Sena political party because Mr. Guru indicated he was never harmed as a result of his political affiliation. The IJ also concluded Mr. Guru failed to establish he was targeted as a result of his religion. Rather, the IJ found Mr. Guru was harmed due to a private dispute caused by his investigation of and confrontation with the DJJS leaders. The IJ therefore denied Mr. Guru's application.

Mr. Guru timely appealed the IJ's decision to the BIA. On July 29, 2015, in a single-member decision, the BIA dismissed Mr. Guru's appeal. Because Mr. Guru "ha[d] not shown that the mistreatment he suffered in India constitutes persecution under the [INA]," the BIA rejected Mr. Guru's claims based on religion and membership in a particular social group. The BIA also rejected Mr. Guru's assertion of a well-founded fear of persecution. And since Mr. Guru failed to satisfy the lower standard required for asylum, the BIA also denied Mr. Guru's request for withholding of removal. Finally, the BIA declined to grant protection under the Convention Against Torture because the evidence did not demonstrate Mr. Guru would more likely than not be tortured if he returned to India.

Mr. Guru timely petitioned this court for review of the BIA's order.

## II. DISCUSSION

Where, as here, a single member of the BIA issues a brief order affirming the IJ's decision, we review the BIA's order as the final agency determination and limit

5

our review to the grounds specifically relied upon by the BIA. *Uanreroro v. Gonzales*, 443 F.3d 1197, 1203–04 (10th Cir. 2006). "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Id.* at 1204. We review the BIA's legal conclusions de novo and its factual determinations for substantial evidence. *Id.*; *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009).

Here, Mr. Guru challenges the BIA's determination that he did not establish persecution as required to support his asylum application. "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). "The BIA's determination [on the issue of persecution] must be upheld if it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* (quoting *INS v. Elias–Zacarias,* 502 U.S. 478, 481 (1992)). "Thus, we may reverse the BIA's decision 'only if the evidence presented by [Mr. Guru] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.'" *Id.* (quoting *Elias–Zacarias,* 502 U.S. at 481).

### A.  Application for Asylum

Turning first to Mr. Guru's application for asylum, Mr. Guru bore the burden of proving eligibility for asylum. 8 U.S.C. § 1158(b)(1)(B)(i). To qualify for asylum, Mr. Guru must first prove he is a refugee, which requires proof he is "unable or

unwilling to return to" India "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005).

Mr. Guru based his asylum application on alleged persecution resulting from his religion and membership in a particular social group. For both of these categories, Mr. Guru was first required to prove he had suffered persecution. "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and must entail more than just restrictions or threats to life and liberty." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011) (internal quotation marks omitted). There are three types of persecution that satisfy the statutory requirement: (1) "a well-founded fear of future persecution," (2) "past persecution sufficient to give rise to a presumption of future persecution," or (3) "past persecution so severe that it supports an unwillingness on the applicant's part to return to that country." *Chaib*, 397 F.3d at 1277. The BIA concluded Guru had not experienced past persecution and did not have a well-founded fear of future persecution. After reviewing the record in this case, we find substantial evidence supporting the BIA's conclusions.

## 1.    Past Persecution

To be eligible for asylum based on past persecution, "an applicant must show (1) an incident, or incidents, that rise to the level of persecution; (2) that is on account of one of the statutorily-protected grounds; and (3) is committed by the

7

government or forces the government is either unable or unwilling to control." *Niang v. Gonzales*, 422 F.3d 1187, 1194–95 (10th Cir. 2005).

Here, Mr. Guru testified he was threatened twice after confronting a group of DJJS leaders. Because he threatened to expose the leaders' alleged corruption, Mr. Guru was beaten on one occasion for "[m]aybe two, two and a half minutes." And as a result of the beating, Mr. Guru suffered injuries that required overnight hospitalization. Even accepting Mr. Guru's testimony as credible, the BIA concluded Mr. Guru's experience did not rise to the level of persecution.

The BIA's decision is consistent with similar determinations upheld by this court despite evidence of circumstances similar to or more severe than those alleged by Mr. Guru. *See*, *e.g.*, *Ritonga*, 633 F.3d at 976 (affirming BIA's finding of no persecution where Christian was the target of taunts and threats on several occasions and suffered head injuries when Muslims broke into her home); *Sidabutar v. Gonzales*, 503 F.3d 1116, 1124 (10th Cir. 2007) (affirming BIA's finding of no persecution where Christian was repeatedly beaten and robbed at the hands of Muslim classmates); *Kapcia v. INS*, 944 F.2d 702, 704–05, 708 (10th Cir. 1991) (affirming BIA's finding of no persecution where petitioner was detained twice for two-day periods during which he was interrogated and beaten based on his political affiliation, was assigned poor work tasks and denied bonuses, was conscripted into the army where he experienced constant harassment, and was fired from his job). As such, we conclude the BIA's finding was supported by substantial evidence.

8

**2. Well-Founded Fear of Future Persecution**

Having failed to prove past persecution, Mr. Guru could still qualify as a refugee under the INA if he established a well-founded fear of future persecution, which requires "both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Karki v. Holder*, 715 F.3d 792, 801 (10th Cir. 2013).

The BIA determined Mr. Guru failed to meet this standard for several reasons. The BIA first noted that the relevant events supporting Mr. Guru's asylum application took place in 2013, and Mr. Guru left India shortly thereafter. Mr. Guru submitted articles which confirm that, after his departure from the country, litigation was commenced to allow the release and cremation of Ashutosh's body, and that an Indian court ordered the cremation. The BIA thus concluded that Mr. Guru failed to establish that the Indian government is unable or unwilling to control the DJJS leaders. In addition, the BIA noted that some of Mr. Guru's family members, who are also followers of Ashutosh, remain in Indian unharmed and that he has not provided any evidence demonstrating the DJJS leaders are interested in harming him today.

The BIA's finding that Mr. Guru does not suffer from a well-founded fear of persecution is supported by substantial evidence in the record.

### B. *Withholding of Removal*

Mr. Guru also argues the BIA erred in denying his request for withholding of removal. Under the INA, the Attorney General may prohibit removal if she determines "the alien's life or freedom would be threatened" in the country to which he would be

9

removed "because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "The burden of proof for withholding of removal is higher than for asylum." *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015). Under this burden, the applicant must prove a "clear probability of persecution on account of a protected ground." *Id.* at 987 (internal quotation marks omitted). "Failure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim." *Id.* Having failed to establish eligibility for asylum, Mr. Guru has also necessarily failed to satisfy his burden of proof for withholding of removal. We therefore affirm the BIA's denial of Mr. Guru's request for withholding of removal.

## C. Convention Against Torture

Mr. Guru has likewise failed to prove his eligibility for relief under the Convention Against Torture. Under the Convention, Mr. Guru had the burden to prove "it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The Convention defines torture as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering *is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity*.

*Id.* § 1208.18(a)(1) (emphasis added).

10

In this case, Mr. Guru has not identified a public official involved with his past mistreatment. The DJJS followers who threatened and beat Mr. Guru were religious leaders, not public officials. Although these men allegedly had political connections and Mr. Guru's father believed they had political ties with the police, Mr. Guru did not present evidence showing any public official ratified or knew about the DJJS leaders' actions. Thus, Mr. Guru failed to prove he had been or would in the future be mistreated at the instigation of or with the consent or acquiescence of a public official. Accordingly, we uphold the BIA's denial of Mr. Guru's request for protection under the Convention.

## III. CONCLUSION

For these reasons, we **DENY** Mr. Guru's petition for review of the BIA order.

Entered for the Court

Carolyn B. McHugh
Circuit Judge

11