**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GAGANDEEP SINGH,

     Petitioner,

v.

JEFFERSON B. SESSIONS, III,
United States Attorney General,

     Respondent.

No. 17-9520
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **PHILLIPS**, Circuit Judges.
_____

    Petitioner Gagandeep Singh is a native and citizen of India who entered the

United States illegally. He applied for asylum, withholding of removal, and relief

under the Convention Against Torture. The immigration judge ("IJ") found that he

was not credible and denied his application. The Board of Immigration Appeals

("BIA") determined that the IJ's adverse credibility determination was not clearly

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

erroneous and dismissed Mr. Singh's appeal. We agree with the BIA's decision and deny the petition for review.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A. *The First Application*

Mr. Singh was placed in removal proceedings when he attempted to enter the United States without authorization in November 2015. Counsel submitted Mr. Singh's first Form I-589 in February 2016. As the IJ noted, Mr. Singh stated that he feared returning to India based on his membership in Simranjit Singh Mann—a Sikh political party. He alleged that members of an opposing Sikh political group—the Badal party—physically attacked him in June and July 2015. According to Mr. Singh, his refusal to change his party affiliation from the Mann party to the Badal party prompted the attacks. He also alleged that members of the Muslim religious majority in his home town had mistreated and threatened him.

### B. *The Second Application*

Mr. Singh's same attorneys filed his second Form I-589 in May 2016. The IJ noted that the new claim alleged members of the Hindu BJP party had mistreated and threatened Mr. Singh. Mr. Singh attached an undated letter from his village council stating that Badal party members had beaten Mr. Singh's family when they refused to join their party and had threatened to torture Mr. Singh if he returned to India. The IJ also discussed an attached translation of a newspaper article reporting that Mr. Singh himself reported the June 2015 incident to the police.

2

## C. *The Third Application*

Shortly before the merits hearing scheduled for August 2016, Mr. Singh retained new counsel, and the hearing was rescheduled for late September. Two weeks before the hearing, Mr. Singh's new lawyer filed a third Form I-589. The IJ noted that the third application added many details and new claims not previously presented, including the following:

- Mr. Singh's father and uncle were founding members of the Mann party, and after his uncle died under suspicious circumstances, his father took over a key role in the party.

- Mr. Singh was first threatened in March 2015 by unnamed persons who told him to quit the Mann party.

- In May 2015, three people came to see Mr. Singh and told him they were from the Badal party *and* BJP (the Hindu party in power in the national Indian government), and threatened to kill him.

- The June 2015 attack was carried out by several bullies who confronted Mr. Singh on his way home from putting up posters commemorating a Sikh martyr.

- Mr. Singh was beaten so badly in the June attack that he woke up in the hospital.

- Mr. Singh's father and the village council reported the June incident to the police.

- Mr. Singh's main function in the Mann party was to raise money for the weddings of poor women.

- Mr. Singh met and fell in love with one of the women—a Hindu—and the couple got engaged.

- Information about the proposed marriage between a Sikh and Hindu was leaked to the militant wing of the BJP.

3

- The July 2015 attack was carried out by two people who challenged Mr. Singh about dating a Hindu girl without consent.

- When Mr. Singh tried to obtain consent, he was attacked by four boys who said they would give their consent only after he became a Hindu.

- The four boys kicked him in the groin, knocked the turban off his head, and forcibly cut his hair.

Mr. Singh also provided an affidavit from his parents, which the IJ found notable because it failed to mention Mr. Singh's fiancée or the beatings they suffered at the hands of Badal party. He also submitted a new translation of the newspaper article, which contained some significant changes, including (1) the date of the June attack; (2) Mr. Singh's age; (3) the goal of the attackers; and (4) the explanation for why the police did not take any action.

### D. Mr. *Singh's Testimony*

The IJ said Mr. Singh testified at the hearing to additional facts that were absent from his prior applications. For example, Mr. Singh identified his fiancée by name for the first time. When asked for a photograph, Mr. Singh said he did not have any, though he produced several photographs of himself. At first he told the IJ the had never taken photographs. He later changed his testimony to say that he had taken some photographs of her on his phone but deleted them because others sometimes used his phone and he was afraid someone would discover the relationship.

The IJ found Mr. Singh had no good answer for the significant changes between the translations of the newspaper article. For example, Mr. Singh could not explain why both translations said he informed the police of the June 2015 attack

4

when he testified that his father went to the police. The IJ also found significant that Mr. Singh never mentioned his family had been beaten in any of his applications or his testimony. According to Mr. Singh, he only recently learned of the incident even though it was described in the village letter filed with his second application.

Finally, Mr. Singh blamed his first lawyers for failing to say anything about his (1) fiancée, (2) work raising money for the weddings of poor women, or (3) being threatened by Hindus.

### E. *The IJ's Decision*

The IJ found Mr. Singh not credible and denied relief. His reasons included "the lack of consistency between [Mr. Singh's] . . . applications . . . and between those applications and his testimony, and the lack of specific and detailed testimony and/or other evidence regarding the harm [Mr. Singh] claims based on his inter-faith relationship, giving rise to the . . . conclusion that [he] embellished his testimony over time." R. at 259. Further, the IJ noted "certain important inconsistencies between [Mr. Singh's] documentary evidence and his application and his testimony," and "a key omission in [Mr. Singh's] application and testimony in which [he] did not include . . . a pivotal event of violence targeting his family members." *Id*.

The IJ said Mr. Singh had embellished his claim, explaining that Mr. Singh initially "presented a claim based upon the dangers associated with Sikh-centric Punjabi politics—the Badal Party was in power in the Punjab, and he (and his family) was known as a supporter of the rival Mann faction. While that aspect of the claim remained in place, it was . . . amplified by a new, national (rather than regional)

5

component: persecution at the hands of the Hindu-nationalist BJP Party, in power at the national level." *Id*. at 260.

The IJ also found that Mr. Singh had added an entirely new claim of "a personal, religious dimension: the threats of the BJP were not based merely on politics, but also on their visceral disapproval of Sikh-Hindu boyfriend-girlfriend arrangements." *Id*. The IJ further noted numerous inconsistencies between the first and second translations. Also, both translations stated that Mr. Singh reported the June 2015 incident to the police, but his sworn testimony was that his father went to the police.

Finally, the IJ concluded that Mr. Singh had no reasonable explanation for his failure to mention the beatings suffered by his family in his applications or sworn testimony: "Here, the omission of any mention of the beating of others in his home until confronted with the [village council] letter at the end of several hours of testimony clearly does go to the heart of [Mr. Singh's] claim that he has been threatened and persecuted based on his—and his family's—long history as prominent members of the opposition . . . Mann party." *Id*. at 265.

### F. *The BIA's Decision*

The BIA summarized the inconsistencies, omissions, and embellishments detailed in the IJ's decision and concluded the decision provided specific, cogent reasons supported by the record for the adverse credibility finding. It rejected Mr. Singh's attempts to explain some of the discrepancies: "[T]he [IJ] was not required to adopt [Mr. Singh's] explanations when there are other permissible views of the

6

evidence based on the record, . . . and the [IJ] properly based his adverse credibility determination on the totality of the circumstances" R. at 4. *See Kabba v. Mukasey*, 530 F.3d 1239, 1244, 1246 (10th Cir. 2008) (holding BIA is required to apply a "deferential standard" and review the IJ's credibility determinations "for clear error, and only clear error").

## II. DISCUSSION

### A. *Standard of Review and Credibility Determinations*

"[W]e review the BIA's decision as the final agency determination and limit our review to issues specifically addressed therein." *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006). But "[w]e may consult the IJ's decision to give substance to the BIA's reasoning." *Razkane v. Holder*, 562 F.3d 1283, 1287 (10th Cir. 2009). For example, because the BIA in this case adopted the IJ's rationale and summarized the IJ's reasoning, we may consult "the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

"We consider any legal questions de novo, and review the agency's findings of fact under that substantial evidence standard." *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004). "Under that test, our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id*. The substantial evidence standard is "highly deferential." *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004).

7

"Credibility determinations are factual findings . . . subject to the substantial evidence test." *Uanreroro*, 443 F.3d at 1204. Where, as here, "the BIA's decision relies upon an IJ's initial findings, we must ensure that such determinations are substantially reasonable." *Id*. (internal quotation marks omitted).

In making credibility determinations, the trier of fact should consider "the totality of the circumstances, and all relevant factors." 8 U.S.C. §1158(b)(1)(B)(iii). Those factors include "the consistency between the applicant's or witness's written and oral statements . . . the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." *Id*. "Because an alien's testimony alone may support an application for withholding of removal or asylum, the IJ must give specific, cogent reasons for disbelieving it." *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004) (citation and internal quotation marks omitted).

In reviewing the credibility determination at issue here, we do not determine how we would decide the issue de novo or whether any reasonable factfinder could find the petitioner credible. Instead, under the deferential substantial evidence standard, we must affirm the adverse credibility finding "unless any reasonable adjudicator would be compelled to conclude to the contrary." *Uanreroro*, 443 F.3d at 1204 (brackets and internal quotation marks omitted).

**B.** *Analysis*

Mr. Singh argues the BIA wrongly affirmed the IJ's adverse credibility determination.[1] First, he contends the BIA failed to consider his original lawyers' allegedly shoddy work on the first two applications caused omissions and inconsistencies. But the government persuasively argues that "any assumed error on the part of [Mr. Singh's] prior counsel does not begin to explain the problems with [his] credibility throughout the entire proceedings." Resp. Br. at 17. The IJ and BIA provided numerous grounds to disbelieve Mr. Singh beyond "errors" that might be attributed to his first lawyers.

Second, Mr. Singh argues his difficulties with the English language and cultural differences account for the omissions and inconsistencies. For example, he says that he "is a Punjabi speaking Sikh of Indian ethnicity. As such, he struggled to communicate with counsel and often relied on the translation of a fellow detainee." Pet. Opening Br. at 18. But he points to no specific examples linking these factors to an omission or inconsistency, and there is no record evidence to support these arguments.

Third, Mr. Singh argues that "[t]o affect an asylum or withholding claim, an inconsistency must be material." *Id*. at 20. But the governing statute provides that in making a credibility determination, the trier of fact should consider "the totality of the circumstances, and all relevant factors . . . *without regard to whether an*

---

[1] The parties agree that Mr. Singh was not entitled to relief on any of his claims in the absence of credible testimony.

9

*inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim.*"
8 U.S.C. §1158(b)(1)(B)(iii) (emphasis added).

Fourth Mr. Singh suggests that because the medical records corroborate his claims that he was injured in the June and July 2015 attacks, substantial evidence did not support the BIA's decision. He also points to other evidence as bolstering his credibility. "[I]t is not our prerogative to reweigh the evidence, but only to decide if substantial evidence supports the IJ's decision." *Yuk v. Ashcroft*, 355 F.3d 1222, 1236 (10th Cir. 2004).

## III.  CONCLUSION

Under the deferential substantial evidence standard, we uphold the adverse credibility ruling. The IJ gave specific, cogent, and detailed reasons. And the BIA highlighted many of the inconsistencies, omissions, and embellishments that the IJ identified. No reasonable adjudicator would be compelled to reach a different conclusion.

The petition for review is denied.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge

10